**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 19-cv-00745-RM-NYW

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

DIANE D. DALMY, and
MICHAEL J. WOODFORD,

    Defendants.

---

## AMENDED ORDER AND DEFAULT JUDGMENT
---

This matter is before the Court on Plaintiff's Motion for Default Judgment as to Defendant Dalmy (the "Motion") (ECF No. 35). Plaintiff Securities and Exchange Commission ("SEC") advises that Defendant Dalmy (Ms. Dalmy") intends to default in this matter. Upon consideration of the court record, the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

**I.    BACKGROUND[1]**

Ms. Dalmy is a former lawyer based in Denver, Colorado and now in federal prison in Phoenix, Arizona. Since September 2009, OTC Markets placed Ms. Dalmy on its list of prohibited attorneys because she submitted inadequate opinion letters. By September 29, 2016, the SEC entered an Administrative Order which permanently suspended Ms. Dalmy from

---

[1] Based on the well-pleaded factual allegations which a defendant admits upon her default, as well as other permissible submissions by a plaintiff. *See Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016).

appearing or practicing before it as an attorney. But, Ms. Dalmy was undeterred.

Between 2014 and 2016, Ms. Dalmy prepared at least 85 legal opinions letters concerning more than 25 issuing companies. But, because she was on the list of prohibited attorneys, Ms. Dalmy engaged Defendant Michael J. Woodford, also an attorney in Colorado, to sign his name to her opinion letters. Mr. Woodford did nothing more substantive than sign his name or check for trivial errors. Most of these letters concerned stock issued by microcap companies whose securities were traded on the over-the-counter market. Most of the letters expressed the opinion that certain shares of stock held by certain individuals were unrestricted and could be freely traded on the open market. These letters were then sent to transfer agents and brokerage firms; thus, the shareholders in question were able to sell their shares to the public.

Defendants' venture did not stop in 2016. Ms. Dalmy continued to prepare various legal opinions letters concerning certain companies and, whether, for example, certain shares were exempt from any registration requirement. And, Mr. Woodford continued to sign off on them as if he conducted the due diligence and prepared the letters.

Ms. Dalmy's conduct was not limited to writing opinion letters. Despite her suspension from practicing before the SEC, she continued to help a corporate client make four SEC filings. She assisted with the filing of an 8-K[2] and three Schedules 13D.[3]

On March 14, 2017, OTC markets placed Mr. Woodford on its list of prohibited

---

[2] "A Form 8–K is…used to disclose a material event to the SEC in a timely manner." *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 672 n.2 (D. Colo. 2007) (citing 15 U.S.C. § 78m(a) (2006)).
[3] "The purpose behind Section 13(d) is to alert the marketplace and holders of the security in question to every large rapid aggression or accumulation of that security which might reflect a potential change in corporate control." *Srebnik v. Dean*, No. 05-CV-01086-WYD-MJW, 2006 WL 2790408, at *4 (D. Colo. Sept. 26, 2006) (quotation marks, ellipsis, and citation omitted).

attorneys. Thus, Ms. Dalmy could no longer used Mr. Woodford to sign off on opinion letters she wrote.

In March 2019, the SEC filed this enforcement action against Ms. Dalmy based primarily on allegations that she engaged in a fraudulent and deceptive scheme to evade limitations and restrictions on her ability to prepare legal opinion letters concerning the sale of microcap securities. The SEC brings three claims for relief: violation of Section 17(a) of the Securities Act; violation of Section 10(b) of the Exchange Act and Rule 10b-5; and violation of the SEC's Administrative Order of September 26, 2016. As remedies, the SEC seeks injunctive relief against and monetary payments from Ms. Dalmy. The SEC also requests the Court to retain jurisdiction over this matter.

Effective July 31, 2019, Ms. Dalmy was disbarred from practicing law in the State of Colorado.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 55(a), default may enter against a party who fails to appear or otherwise defend the case brought against her. Whether to enter default judgment is committed "to the district court's sound discretion." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation omitted). When exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation marks and citation omitted).

## III. ANALYSIS

Before it may grant a motion for default judgment, the Court must take two steps. First, the Court has an affirmative duty to ensure its jurisdiction over both the subject matter of the

3

action and the parties. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by a defendant upon default—support a judgment on the claims against the defaulting defendant. *Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1066 (D. Colo. 2015); *see also Federal Fruit & Produce Co. v. Red Tomato, Inc.*, No. 08-cv-0114-RPM-MEH, 2009 WL 765872, *3 (D. Colo. March 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment." (citations omitted)). The Court considers each step in turn.

### A. JURISDICTION

The Court finds the jurisdictional prerequisites for granting default judgment are satisfied in this case. The Court has subject matter jurisdiction over actions brought by the United States or its agencies and those based on federal questions. 28 U.S.C. §§ 1345, 1331. In addition, the Court has personal jurisdiction over parties who are Colorado residents or were Colorado residents at the time when they committed the alleged acts which were the subjects of complaint. *See Walden v. Fiore,* 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997) ("[T]he plaintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials.").

## B. THE MERITS - LIABILITY

In failing to respond or otherwise appear, a defendant admits the factual allegations of the complaint other than those relating to damages. *See* Fed. R. Civ. P. 8(b)(6). *See also Burlington Northern Railroad Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996); 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2688.1 (4th ed. 2019). In addition, the Court accepts the undisputed facts set forth in any affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007). In this case, the Court finds the unchallenged facts constitute a legitimate basis for the entry of a default judgment.

### 1. The securities fraud claims.

The SEC has alleged that Ms. Dalmy violated (1) Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); and (2) Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 thereunder. The Court examines each in turn.

To order to establish its second claim under Section 10(b) and Rule 10b-5 (hereafter "§ 10(b)"[4]) in an enforcement action, the SEC is required to show defendant "(1) made a misrepresentation or omission (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, and (5) by virtue of the requisite jurisdictional means." *SEC v. Wolfson*, 539 F.3d 1249, 1256 (10th Cir. 2008). Unlike private litigants, the SEC is not required to prove reliance or injury in an enforcement action. *Id.* To establish the SEC's first claim under Section 17(a), substantially similar proof is required with the primary difference that the SEC is

---

[4] The coverage of Rule 10b-5 is coextensive with that of § 10(b). *SEC v. Wolfson*, 539 F.3d 1249, 1256 n.11 (10th Cir. 2008) (citing *SEC v. Zandford*, 535 U.S. 813. 816 n.1 (2002)).

required to establish scienter under § 17(a)(1), *Wolfson*, 539 F.3d 1256, while negligence is sufficient under § 17(a)(2) and (3), *SEC v. Smart*, 678 F.3d 850, 857 (10th Cir. 2012). The SEC argues there are sufficient factual allegations to find Ms. Dalmy liable under both antifraud statutes. The Court agrees.

***Misrepresentation or omission of material fact.*** "A statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1339 (10th Cir. 2012) (quotation marks and citation omitted). Here, Ms. Dalmy made a misrepresentation or omission of fact when she wrote the opinion letters and were responsible for their content but represented they were prepared by and the product of Mr. Woodford's professional legal services. This misrepresentation or omission was material because in determining how to handle the securities or whether to buy the securities, as the case may be, the transfer agents, brokerage firms, and investors would have considered it important to know the letters were written by an attorney listed as a prohibited service provider by the OTC Markets.

***Scienter or negligence***. The Tenth Circuit defines scienter as "a mental state embracing intent to deceive, manipulate, or defraud, or recklessness." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d at 1343 (quotation marks and citation omitted). There can be no doubt that by having Mr. Woodford, a family law attorney, sign off on her opinion letters Ms. Dalmy intended to deceive and defraud. In light of this conclusion, the Court need not consider whether Ms. Dalmy was also negligent.

***In connection with the purchase or sale of securities/in the offer and sale of any securities.*** Section 17(a) requires the fraud be committed "in the offer or sale" of securities but

the Tenth Circuit has indicated this phrase is often used interchangeably with § 10(b)'s "in connection with." *See Wolfson*, 539 F.3d 1263. "The Supreme Court has consistently embraced an expansive reading of § 10(b)'s 'in connection with' requirement." *Wolfson*, 539 F.3d 1262. "[I]t is enough that the fraud alleged 'coincide' with a securities transaction." *Id.* (quotation marks and citation omitted). The misrepresentations or omissions in Ms. Dalmy's opinion letters coincide and has a connection with the sale of the securities to which the letters related. Thus, this element is also met.

***By virtue of the requisite jurisdictional means.*** Here, Ms. Dalmy wrote the opinion letters and allegedly directly or indirectly made use of the means or instruments of transportation or communication in interstate commerce, the facilities of a national securities exchange, or the mails.

In summary, the Court finds the SEC has shown default judgment may be entered on its two securities fraud claims.

### 2. The Violation of the Commission's Administrative Order

The third, and final, claim alleges Ms. Dalmy failed to comply with the September 29, 2016 Administrative Order by continuing to help a company make SEC filings, after she was suspended from practicing or appearing before the SEC. The Court finds the well-pleaded allegations shows violations occurred.

### C. REMEDIES FOR VIOLATIONS

The SEC seeks the following remedies: permanent injunction against further violations;

other injunctive relief; and disgorgement plus prejudgment interest.[5] The Court addresses each in turn.

***Permanent Injunction for Violations of Securities Law.***  Section 20(b) of the Securities Act and Section 21(d)(1) of the Exchange Act provides that, "upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond" where the defendant is engaged or is about to engage in acts or practices constituting a violation of the Securities Act or Exchange Act or the rules or regulations thereunder. 15 U.S.C. § 77t(b) & 15 U.S.C. § 78u(d)(1).

A proper showing to support an injunction is made "if the SEC demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future." *SEC v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993). Whether there is a likelihood of future violations requires an analysis of several factors, "such as the seriousness of the violation, the degree of scienter, whether defendant's occupation will present opportunities for future violations and whether defendant has recognized his wrongful conduct and gives sincere assurances against future violations." *Pros Int'l, Inc.*, 994 F.2d at 769. No single factor is determinative, but "the degree of scienter 'bears heavily' on the decision." *Pros Int'l, Inc.*, 994 F.2d at 769 (citation omitted). The SEC has shown the need for an injunction is compelling.

Ms. Dalmy knowingly and blatantly violated the restrictions on her practice imposed by the OTC Markets and the Commission. Ms. Dalmy concealed her actions by essentially using Mr. Woodford as her front man, having him sign off on her opinion letters many times over more

---

[5] The SEC's Motion also seeks a civil penalty but the Amended Complaint does not request such relief as to Ms. Dalmy. Accordingly, relief in the form of a civil penalty may not be awarded. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.")

than two years.  Ms. Dalmy has expressed no remorse over or acknowledgement of her wrongful conduct.  And, while Ms. Dalmy is currently in federal prison and was recently disbarred, there is no indication that she will be incapable of continuing to violate the federal securities laws during her confinement – or thereafter – through another conduit.  Accordingly, the Court finds a permanent injunction against further violations of the federal securities laws should be granted.

*Other Injunctive Relief.*  In addition to the permanent injunction, the SEC seeks two other forms of injunctive relief: an order requiring Ms. Dalmy to comply with the Administrative Order; and an order which provides further protection for investors.  The Court addresses each in turn.

First, pursuant Section 21(e)(1) of the Exchange Act, 15 U.S.C. § 78u(e)(1), the Court has jurisdiction "to issue writs of mandamus, injunctions, and orders commanding (1) any person to comply with the provisions of [the Exchange Act], the rules, regulations, and orders thereunder…."  The Administrative Order permanently disqualifying Ms. Dalmy from appearing or practicing before the SEC as an attorney is such an order.  *See In the Matter of Diane D. Dalmy, Esq.*, S.E.C. Release No. 1042, 2016 WL 4088747 (July 29, 2016) (initial decision); *In the Matter of Diane D. Dalmy, Esq.*, S.E.C. Release No. 34-78993, 2016 WL 11281398 (Sept. 29, 2016) (final decision).  An order which Ms. Dalmy nonetheless chose to ignore and violate.  Accordingly, the Court finds that an order requiring Ms. Dalmy to comply with the Administrative Order should be entered.

As for the second order, the SEC cites to no specific authority for such relief, but the Court assumes the SEC relies on the same provisions as discussed above concerning permanent injunctive relief.  And, for substantially the same reasons, the Court finds that an order should

enter permanently enjoining Ms. Dalmy (1) from providing professional legal services in connection with the offer or sale of securities and requiring her to provide any client seeking legal representation on such matters with copies of the relevant papers on which this Order is based; and (2) from participating in the offer or sale of any penny stock as provided under 15 U.S.C. § 77t(g) and 15 U.S.C. § 78u(d)(6).

***Disgorgement plus Prejudgment Interest.***  The SEC seeks disgorgement which the Supreme Court has stated "is imposed as a consequence of violating a public law and it is intended to deter, not to compensate." *Kokesh v. S.E.C.*, -- U.S. --, 137 S. Ct. 1635, 1644, 198 L. Ed. 2d 86 (2017). An issue is raised, however, as to whether *Kokesh* affected a court's authority to order disgorgement in SEC enforcement proceedings. *See, e.g., SEC v. Camarco*, No. 17-cv-2027- RBJ, 2018 WL 6620878, at *2 (D. Colo. Dec. 18, 2018 ) ("Although the Tenth Circuit has yet to rule on the issue since the Supreme Court decided *Kokesh*, at least 15 federal courts have ruled that *Kokesh* did not overrule the long-standing precedent that courts possess authority to order disgorgement in SEC enforcement proceedings."). An issue in which the Supreme Court has just recently granted certiorari. *SEC v. Liu*, 754 F. App'x 505 (9th Cir. 2018), *cert. granted sub nom.*, *Liu v. SEC*, No. 18-1501, 2019 WL 5659111 (Nov. 1, 2019) (The question presented: "Whether the Securities and Exchange Commission may seek and obtain disgorgement from a court as 'equitable relief' for a securities law violation even though this Court has determined that such disgorgement is a penalty."). As the question is still open before the Supreme Court and is one on which the Tenth Circuit has not ruled, the Court will continue to follow settled precedent and order disgorgement.

A trial court has broad discretion in calculating the amount to be disgorged. *See SEC v.*

*Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006) ("Disgorgement is by nature an equitable remedy as to which a trial court is vested with broad discretionary powers." (quotation marks and citation omitted)). The SEC may be awarded "disgorgement upon producing a reasonable approximation of [Ms. Dalmy's] ill-gotten gains." *SEC v. Curshen* , 372 F. App'x 872, 883 (10th Cir. 2010) (quotation marks and citation omitted).

In this case, Ms. Dalmy was on a retainer with her corporate clients; thus, the SEC does not know how much Ms. Dalmy gained in providing her services. Nonetheless, Mr. Woodford was paid $300 for each opinion letter that Ms. Dalmy wrote and Mr. Woodford signed. Thus, the SEC seeks disgorgement in the amount of $26,700,[6] representing $300 for each of the 85 opinion letters she wrote and for the four public filings in which she provided assistance. The Court finds this amount to be reasonable. In addition, the Court agrees that prejudgment interest calculated in the same manner in which the Internal Revenue Service calculates tax underpayments is appropriate, i.e., under 26 U.S.C. § 6621(a)(2). As of July 31, 2019, that amount is $3,037.62 and will continue to accrue until final judgment is entered.

**D. RULE 54(b)**

When a party seeks judgment on fewer than all parties, its motion implicates Fed. R. Civ. P. 54(b). In determining whether to enter judgment pursuant to Rule 54(b), the Court "weigh[s] Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Richfield Hosp., Inc. v. Shubh Hotels Pittsburgh, LLC*, No. 10-cv-00526-PAB-MJW, 2010 WL 5129532, at *2 (D. Colo. Dec. 9, 2010) (citing *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005)).

---

[6] $300 x (85 + 4) = $26,700.

In this case, the SEC's proposed final judgment provides for the Court to enter judgment pursuant to Rule 54(b) but its Motion fails to address the requirements of Rule 54(b) and why it should enter on this record. Accordingly, Rule 54(b) certification will not enter. Thus, default judgment shall enter but final judgment shall not enter. *See D&H Marketers, Inc. v. Freedom Oil & Gas, Inc.*, 744 F.2d 1443, 1444-45 (10th Cir. 1984) (recognizing that although the order directed entry of default judgment against some defendant, absent the entry of final judgment under Rule 54(b), the order was not final and not enforceable by the prevailing party until the entire case was terminated). The SEC, however, is not precluded from seeking a Rule 54(b) certification, with an appropriate motion showing such relief may be had.

### E. DISTRIBUTION OF MONIES

The SEC's proposed amended final judgment suggests that the government hold the funds ordered paid, together with any interest and income earned, until it determines whether to distribute the money or to pay it to the United States Treasury. The Court finds the SEC's proposal may be approved, subject to the SEC providing notice of its decision to the Court.

### IV. CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That Plaintiff's Motion for Default Judgment as to Defendant Dalmy (ECF No. 35) is **GRANTED** as stated herein;

(2) That **DEFAULT JUDGMENT** shall enter in favor of Plaintiff and against Defendant Dalmy as stated herein, to wit:

  (i) That Defendant Dalmy is liable on Plaintiff's first, second, and third claims for relief;

(ii) That Defendant Dalmy is permanently enjoined from engaging in any conduct which violates the federal securities laws;

(iii) That Defendant Dalmy shall comply with the September 29, 2016, Administrative Order;

(iv) That Defendant Dalmy is permanently enjoined from providing legal services in connection with the offer or sale of securities and shall provide to any clients and potential clients seeking legal representation on such matters copies of (a) the operative complaint and any orders and judgments against her in this case and in the case of *SEC v. Zenergy Int'l, Inc.*, No. 13-cv-05511 (N.D. Ill. Sept. 30, 2015) and (b) the Administrative Order entered in *In the Matter of Diane D. Dalmy, Esq.*, Exchange Act Release No. 78993 (Sept. 29, 2016);

(v) That Defendant Dalmy is permanently enjoined from participating in the offer or sale of any penny stock as provided under 15 U.S.C. § 77t(g) and 15 U.S.C. § 78u(d)(6);

(vi) That Defendant Dalmy shall disgorge the amount of $26,700;

(vii) That Defendant Dalmy shall pay prejudgment interest on the disgorged amount, calculated pursuant to 26 U.S.C. § 6621(a)(2), which interest totals $3,037.62 as of July 31, 2019 and shall continue until final judgment is entered; and

(viii) That Plaintiff is awarded post-judgment interest pursuant to 28 U.S.C. § 1961 once final judgment is entered, which interest shall continue to accrue until

the judgment is satisfied; and

(3) That final judgment shall not enter at this time, but Plaintiff is not precluded from seeking such relief if warranted by the record.

DATED this 9th day of January, 2020, *nunc pro tunc* to the 2nd day of December, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge